LEWIS WERNWAG *vs.* JOHN M. PAWLING.—*December*, 1833.

The object of the 1st sect. of the 4th art. of the Constitution of the *United States*, in declaring, that full faith and credit should be given in each State, to the public acts, records, and judicial proceedings of every other State, when properly authenticated, was to give such acts, records and proceedings, full faith and credit; that is, to attribute to them positive and absolute verity, so that they cannot be contradicted, or the truth of them denied, any more than in the State where they originated.

If a judgment is conclusive in the State where rendered, it is equally conclusive every where else. If re-examinable there, it is likewise re-examinable here. It is therefore, put upon the same footing as a domestic judgment, and the jurisdiction of the court pronouncing the judgment, is open, upon a proper state of the pleadings.

The *Pennsylvania* act of 1810, concerning arbitrations examined.

APPEAL from *Frederick County Court.*

This was an action of *Debt,* instituted by the appellee, against the appellant, on the 14th of March, 1829, upon a judgment obtained by the plaintiff, against the defendant, in *Montgomery* connty court, in the State of *Pennsylvania.* The declaration contained four *counts,* in each of which the judgment of the court in *Pennsylvania,* was averred to be, for $215 88½.

It appeared from the record, which was admitted to be authenticated agreeably to the act of Congress, that the parties appeared by their attornies, on the day fixed by the rule for the selection of arbitrators, when they were chosen accordingly by their said attornies, and a time and place agreed on, for them to meet, and make their award. That the arbitrators reported their award, to the prothonotary of the court, in favor of the plaintiff, for $215 88½, upon which a judgment was entered by him, as follows. "And now, to wit, December 24th, 1824, the said arbitrators report in favor of the plaintiff, $215 88½. December 24th, 1824. *Judgment nisi.*"

By the record it also appeared that a *ca sa* and *scire facias* had been issued in *Pennsylvania* on this judgment, in each of which, it was recited to be for $736. Issue was joined upon the plea of *nul tiel record.*

At the trial the plaintiff offered in evidence to the court the record of the judgment upon which the action was brought. The defendant objected to it as inadmissible, admitting however, that it was properly authenticated. This objection the court [Shriver and Buchanan, A. J's,] overruled.

The plaintiff then offered in evidence the act of assembly of the State of *Pennsylvania,* of the 20th of March, 1810. The defendant, waiving all objection to the book as evidence, opposed the reading of it to the court, as competent proof. This objection likewise was overruled by the court. The defendant excepted, and the judgment being against him, he brought the record by appeal to this court.

The cause was argued before Buchanan, Ch. J., and Archer, and Dorsey, J.

*James Raymond* for the appellant contended.

1. The judgment upon which this action was instituted, was either the judgment of a court of limited and special jurisdiction, or of a court of general jurisdiction exercising special powers; and in either case, it is necessary to show a strict compliance with the law, conferring the authority exercised. *Shivers vs. Wilson,* 5 *Harr. and Johns.* 132.

2. The act of assembly of *Pennsylvania,* is to be construed according to the rules of construction prevailing in our courts; and not according to the law of that State. If the construction put upon the law in *Pennsylvania* is relied on, it should be proved as a fact in the cause, in the usual way. *Brackett vs. Norton,* 4 *Con. Rep.* 517. *Andrews vs. Herriott,* 4 *Cow.* 525, *note* 6. To show how the arbitrators should have proceeded, he cited *Wickes vs. Caulk,*

5 *Harr. and Johns.* 38.    The arbitration system of *Pennsylvania* is not to be regarded with the same favor as ours; because there, either party may *compel* the other to submit to arbitration.

3. There is a variance between the declaration and record offered in evidence, in regard to the amount of the debt.

4. The judgment on the award was not properly entered. It is nothing more than a conditional judgment.

*Duckett* for the appellee, contended,

1. That at common law, the plea of *nul tiel record* puts in issue, and puts in issue only, the existence or operation of a judgment or record; but does not put in issue its validity. He referred to 2 *Saund. Plead. and Ev.* 315, 132. 1 *Chitty,* 481, 356.    1 *Saund. Plead.* 499.

2. That at common law, no objection to a judgment can be shown by pleading in a collateral action, the jurisdiction of the tribunal rendering the judgment, not being denied and disproved.    And on this point referred to *Hayward vs. Ribbans,* 4 *East.* 311.    *Cholmley vs. Veal,* 6 *Mod.* 304. *Campbell vs. Cumming,* 2 *Burr.* 1187.

3. That under the Constitution of the *United States,* the laws of Congress made in accordance therewith, and the decisions of Supreme Court of the *United States,* expounding and interpreting the same, the records and judicial proceedings of each State court, shall have such faith and credit given to them in every other State with the *United States,* as they have by law or usage in the courts of the State whence the said records are or may be taken; and that the State courts generally, if not universally, have recognized, and acted upon the aforegoing principle.    That is, that a judgment of a State court, if valid and binding in the State in which it is rendered, properly authenticated, shall be valid and binding in every other State of the Union.    That such plea, and such plea only, shall be good and available against such judgment in every other State, as would be good and available if pleaded against such judgment in the

courts of the State in which the judgment has been render-
ed. Therefore, if the *Pennsylvania* record exhibits a
judgment valid and binding upon *Wernwag*, in *Pennsylva-
nia*, at the time of the commencement of the suit of *Paw-
ling* in *Frederick* county court, then, the court of appeals
of *Maryland* must recognize that judgment as equally valid
and binding in *Maryland*, now. And if to the judgment
exhibited by the *Pennsylvania* record, the plea of *nul tiel
record* in a *Pennsylvania* court would not be regarded as
a good and proper plea, and on such plea a *Pennsylvania*
court would not declare the judgment a nullity ; then, the
court of appeals of *Maryland* cannot regard the plea of
*nul tiel record* as a good and proper plea, and must not de-
clare the judgment a nullity. He cited on this third point,
*Constitution of the United States*, art. 4, sec. 1. *Act of
Congress* of 24th May, 1790, vol. 1, 115. *Mills vs. Duryee*,
7 *Cranch*. 481. *Hampton vs. McConnell*, 3 *Wheat*. 234.
3 *Story's Com. on Con*. 181, 183. 1 *Kent's Com*. 243.
*Benton and Burgot*, 10 *Serg. and Rawl*. 240. *Nixon vs.
Young*, 2 *Yeates*, 156. *Borden vs. Fitch*, 15 *Johns. Rep*.
121.

4. He contended, that the judgment set out in the *Penn-
sylvania* record, is a valid and subsisting judgment against
*Wernwag*, and in favor of *Pawling*, in the State of *Penn-
sylvania* at this time. *First*, that it is a valid and subsist-
ing judgment in *Pennsylvania*, looking solely to the act of
the 20th of March, 1810, construing that law, *proprio vigore*,
and *per se*, without deriving any aid in its construction
from the decisions of the courts of *Pennsylvania* upon that
law, expounding and interpreting the law. And in sup-
port of that position, he referred to 10th section of the act
the 20th of March, 1810, in *Purdon's Digest* of the laws of
*Pennsylvania*. *Secondly*, on this point he contended, that
the decisions of *Pennsylvania*, expounding and interpret-
ing the act of the legislature of *Pennsylvania*, of the 20th
of March, 1810, taken in connection with the *Pennsylva-
nia* judgment, and the aforesaid last mentioned act of the

legislature of that State, go if possible, more conclusively to show, that the judgment is valid and binding in *Pennsylvania*, than the aforesaid act of Assembly does, considered in connection with the judgment independently of those decisions. And he referred in proof of this position, to *The Commonwealth vs. Lafitte and others,* 2 *Serg. and Rawle,* 106. *King vs. Sloan,* 1 *Serg. and Rawle,* 78. *Post vs. Sweet,* 8 *Serg. and Rawle,* 391. *Zeigler vs. Zeigler,* 2 *Serg. and Rawle,* 286. Upon this point he contended further, that notwithstanding foreign laws are to be proved as other facts ; and notwithstanding the laws of each State are to be regarded in every other State as foreign laws, and as such proved ; and notwithstanding the decisions of any State recognizing and declaring the existence of a State law, are not to be regarded as evidence of the existence of that law, where the law itself is either not proved or admitted on the trial; still where the law itself is produced upon the trial, and its existence and validity admitted by the opposite party as in this case ; and where the question as in this case arises upon the proper construction of the law, the judicial tribunals of one State may look into the reported *decisions* of the judicial tribunals of another State in which the law exists in force; not for the purpose of being conclusively bound by them, but as evidence of the construction which those tribunals have placed upon the law ; and that upon principles of comity, such reported decisions of a State court giving a construction to their own laws, are entitled to great consideration and high respect; and unless clearly erroneous, should exercise a powerful agency upon the minds of the judges of another State court, in the formation of their decision upon the law, whose existence and validity are admitted.

He further contended, that the cases cited upon this point by the counsel for the appellant, do not conflict with the position last laid down ; because in those cases, the question was not, whether the reported decisions were evidence

of the construction, which the court passing those decisions gave to the law ; but whether those decisions were evidence of the existence of the law upon which they professed to decide.   The law was not there as here incorporated in the record, or produced on the trial, and admitted by the opposite party to be a binding and subsisting law.

5. He contended that under the proof in the record, the courts of *Pennsylvania* would not sustain the plea of *nul tiel record*, and would not under such plea pronounce the judgment in question a nullity.   1. Because by the law and decisions of *Pennsylvania*, it appears that an award of arbitrators when entered upon the docket of the prothonotary, becomes, and continues to be a valid and subsisting judgment until reversed ; and that it can only be reversed in two ways, to wit, by appeal, or writ of error, neither of which have been resorted to.   He referred to the *Commonwealth vs. Lafitte,* 2 *Serg. and Rawle,* 106.   *Ebersoll vs. Krug,* 3 *Binney,* 528.   *Studebacker vs. Moore,* 3 *Binney,* 126.   *Sicard vs. Peterson,* 3 *Serg. and Rawle,* 468.   *Lents and Stroh,* 6 *Serg. and Rawle,* 38.   *Zeigler vs. Zeigler,* 2 *Serg. and Rawle,* 286.   2. Under this point he concluded, that an award of arbitrators although erroneous, cannot according to the decisions of *Pennsylvania,* be annulled collaterally in another action, while the judgment on it remains unreversed.   And he cited *McPherson vs. Hamilton,* 2 *Yeates,* 40.   *Hostetter vs. Kaufman,* 11 *Serg. and Rawle,* 147.

6. He contended, that even if the *Pennsylvania* judgment, for the purpose of obtaining its reversal, had have been attacked in the courts of *Pennsylvania* within the proper time, and in the proper manner, those courts could not have reversed and annulled, but would have confirmed and sanctified the judgment.   In other words, that at whatever time, and under whatever circumstances, the regularity and validity of the *Pennsylvania* judgment might have been canvassed before the tribunals of *Pennsylvania,* those tribunals would have felt themselves constrained to pro-

nounce the judgment, meritorious, regular, and valid, both by the *lex scripta* of their statute, and in analogy with their own decisions upon their arbitration system, settling its interpretation, and limiting and defining its extent and import. And he referred to *Thompson vs. White,* 4 *Serg. and Rawl.* 135. *Spangler vs. Rambler,* 4 *Serg. and Rawl.* 140. *Kimble vs. Sanders,* 10 *Serg. and Rawl.* 193. *Negley vs. Stewart,* 10 *Serg. and Rawl.* 207. *Boone vs. Reynolds,* 1 *Serg. and Rawl.* 231. *Oppenheimer vs. Comly,* 3 *Serg. and Rawl.* 3. *Bosler vs. Poe,* 13 *Serg. and Rawl.* 232.

7. That there was *no variance* between the judgment set out in the declaration, and the award of the arbitrators, resulting from the failure to declare in the declaration for the costs in the county court, ascertained by the prothonotary; because the award of the arbitrators does not embrace costs; and by the act of the legislature of *Pennsylvania,* the award of the arbitrators, and that alone, when entered on his docket by the prothonotary becomes the judgment of the court, and because that judgment in the language of the arbitrators is literally set forth.

8. He contended that the entry on his docket by the prothonotary, of the words "judgment *nisi,*" does not vitiate the judgment, which had been previously consummated by the entry by the prothonotary on his docket of the award of the arbitrators, in the language of the award. The act of *Pennsylvania declaring* that the *award* of the arbitrators, when entered upon the docket by the prothonotary shall from that moment become a binding judgment of the court, unless reversed upon appeal to be taken within twenty days from the entry of the award upon his docket by the prothonotary. That therefore, the words "judgment *nisi,*" are to be regarded either as surplusage, or as merely intended to indicate that the judgment, unless appealed from in twenty days, would become final and conclusive; and in either view these words are harmless; the judgment not having been appealed from within the twenty days, or at any time.

ARCHER, J., delivered the opinion of the court.

By the *first* section of the *fourth* article of the constitution of the *United States*, it is declared, "that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State, and the congress may by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

The object of this article of the constitution, was to give to such judgments, full faith and credit; that is, to attribute to them, positive and absolute verity, so that they cannot be contradicted, or the truth of them be denied, any more than in the State where they originated.

And congress, in conformity with the power conferred on the 26th of May, 1790, by their act passed on that day, declared that such records and judicial proceedings, authenticated as prescribed by the act, should have such faith and credit given to them, in every court within the *United States*, as they have by law or usage, in the courts of the State from whence the said records are, or shall be taken. If a judgment is conclusive in the State where rendered, it is equally conclusive every where. If re-examinable there, it is likewise re-examinable here. It is therefore put upon the same footing as a domestic judgment. 3 *Story on Const.* 183. *Mills vs. Duryee,* 7 *Cranch.* 481. 3 *Wheat.* 234. In *Mills vs. Duryee,* it is said, the only inquiry, where the suit is upon the judgment of another State, is, what is the effect of the judgment in the State where rendered. The question of jurisdiction of the tribunal pronouncing the judgment, is however, also examinable ; for if the tribunal had no jurisdiction, the judgment would be a nullity every where. 4 *Cowen,* 294. 15 *Johns* 141.

The question then, of the jurisdiction of the court pronouncing the judgment, would be open for inquiry, on a proper state of pleadings. Without however stopping to enquire, whether that question could properly be raised on the plea of *nul tiel record,* and on the bare offer to introduce

the copy in evidence; we shall proceed to inquire, whether there was a defect of jurisdiction, and if there was not, whether the proceedings are with proper precision, specially set forth, without any examination of the legal necessity, for so specially setting them out.

And here it may be remarked, that a resort to the decisions of the courts of *Pennsylvania*, upon all the objections, both as to jurisdiction and the necessity of specially setting out all the proceedings, to give validity to the judgment, would conclusively show, that the various points raised by the appellant, in relation to these matters, could not be sustained in any tribunal of that State. 1 *Serg. and Rawl.* 78. 2 *Ib.* 106. 8 *Ib.* 391. 3 *Ib.* 468. 6 *Ib.* 38. 4 *Ib.* 140. 10 *Ib.* 193, 207. 1 *Ib.* 231. 3 *Ib.* 3. 13. *Ib.* 231, 232. 3 *Binney*, 528, 126.

But on the concession, that these decisions not having been proved as facts, could not be judicially noticed, and that they could legitimately have no other effect, than the determination of any other learned tribunal, which might be called on, to aid us in the construction of the act of assembly of *Pennsylvania*, (a question we do not mean to decide,) we shall proceed to examine the act referred to.

The law was passed in 1810, and is entitled "an act concerning arbitrations." Its object and design was, to enable either party to coerce an arbitrament of his case, without, and even against, the consent of the opposing party.

In ordinary cases, four things appear to be necessary to be done, before the jurisdiction attaches.

1. That there should be a rule of reference.
2. The appointment of arbitrators and notices as required by the law.
3. Residence of the arbitrators.
4. That they be sworn or affirmed.

The first and fourth requisites appear to have been complied with. The rule of reference was strictly in compliance with the act, and it appears by the return of the arbitrators, that they were sworn, or affirmed; and as by

the act, they possessed power to qualify each other, their certificate is amply sufficient to establish that fact. The second and third requisites, although necessary to confer jurisdiction in ordinary cases, occurring under the law, cannot be required here.

It is averred in the record, that the parties met in the prothonotary's office, and *agreed* upon the arbitrators to decide their cause; and as appears from the record, being both present, when the time and place of meeting was fixed by the officer, the notices demanded by the *first* and *eighth sections*, were entirely unnecessary, either to be proved or shown. Nor was it necessary it should appear, that the arbitrators resided in the county where the reference was made, for it was competent undoubtedly for both parties to agree upon the arbitrators, without reference to their residence; and having so agreed, they ought not to be heard to say, that they were not qualified to act for want of residence; or because it did not appear where they resided.

It is manifestly unimportant, at what period of time the award was returned; for the 25th section of the act, making it their duty to return the award within a specified time, was not intended to affect the validity of the award, but only their compensation, which for their trouble they should receive, and operated in the nature of a penalty upon them, for a failure to comply with the requisitions of the act.

From these considerations it appears, that the jurisdiction of the arbitrators attached, and that every thing has been set out in the proceedings, which it was necessary to show, to give them validity.

The award being thus returned to the office of the prothonotary of the court of common pleas, it became a judgment of that court, entitled to all the consideration, and conclusive character, which any other rendered in that tribunal could have, unless indeed, as has been contended, it be considered, from the entry of *judgment nisi*, as a mere conditional judgment. But it ought not to be thus viewed.

For the 11th section points clearly to the meaning of the entry *judgment nisi.* It is to become an absolute judg-ment, unless an appeal be entered, and unless bail and re-cognizance be entered into within twenty days thereafter; for the law directs that unless such bail be given, execution may issue on such judgment. That this became a judgment of the court of common pleas, after the entry of judgment by the prothonotary, has been decided in 3 *Binney*, 228, and in this decision we entirely concur. It is called a judgment in the law, and has all the attributes of a judgment imparted to it. It is a lien on the lands of the defendant, and its fruits may be reaped by an execution issued from the court of common pleas. And that tribunal would have all the power over such process, which it would have over any other process of execution, issued upon any other judgment by them rendered; which power could scarcely have been confer-red, had not the law makers considered it a judgment, and a judgment of that court also. That the judgment may in many cases be entered by the prothonotary, while the court of common pleas was not in session, could scarcely be considered as bearing on this enquiry. The clerks of our own courts, by the law of 1801, *ch.* 70, *sec.* 17, were per-mitted to enter judgments on the fiat of a judge, but they were not certainly on that account, the less entitled to the appellation and dignity of judgments of the county courts.

Considering the judgment as one of the court of common pleas, no objection to the jurisdiction of that tribunal has been taken, unless indeed, the objection which has been examined in relation to the arbitration. But it is supposed, that there exists a variance between the record of the judg-ment, and its statement in the pleadings. It would indeed appear, from looking at the *ca. sa.* and the *sci. fa.* which were issued on this judgment, that it had been for a greater sum than that stated in the *nar.* But we cannot look to these, to determine the extent of the judgment.

From the record of the judgment it would appear, that

it had been rendered for the sum stated in the award of the arbitrators, which corresponds with the sum averred.

The variance between the writ, and the record offered in evidence, as to the amount of the judgment, could not certainly on this issue be taken advantage of, and could furnish no objection to the admissibility of the record in evidence.

JUDGMENT AFFIRMED.