IGNATIUS BOARMAN *vs.* HENRY PATTERSON AND FIELDER
ISRAEL, EXECUTORS OF HENRY PETERS.—*December* 1843.

After a judgment of condemnation has been rendered in an attachment
cause, if the defendant desire to move to quash the writ, regularly he
should first move to strike out the judgment, and then make his motion to
quash.

Without the short note showing the plaintiffs cause of action, and the issu-
ing thereon of a capias ad respondendum or a summons, (as the case may
be,) the proceedings in an attachment would be wholly irregular.

Nothing ought to be recovered by a condemnation of the property attached,
which was not recoverable from the defendant, had he given special bail,
and appeared to the process issued against him.

Where the short note states a cause of action in assumpsit, and the writ issu-
ed was in trespass upon the case, matters for which debt or covenant was
the only remedy could not be recovered.

A short note cannot be amended from assumpsit, to debt or covenant, where
the writ is in trespass upon the case.

It is no ground for quashing an attachment that some specific portions of
the claim as made could not be recovered under the short note.

Where the creditor deposes "that he is credibly informed, and verily believes,
that the said J. B. (the debtor) has removed from his place of abode with
intent to injure and defraud his creditors," this is a sufficient compliance
with the act of 1795, ch. 56, sec. 1, in that particular.

A judgment on attachment which not only condemns property towards satis-
fying that portion of a plaintiff's demand which might be recovered under
the short note, but also to satisfy that which could not be so recovered, is
erroneous.

Where the plaintiff exhibits a claim for principal, and with interest added, up
to a given day, it is error in the county court to enter up a condemnation
for the gross sum as bearing interest from the day on which the attachment
issued. The charge of interest upon the interest was not warranted under
such circumstances.

This court will not reverse a judgment of condemnation in an attachment
cause upon an appeal from such judgment, for errors which do not appear
to have been presented to the consideration of the county court, or that it
made any decision in relation thereto.

Where a special limited jurisdiction, distinct from and not embraced by its
general jurisdiction, is conferred by act of Assembly on any tribunal, its
powers to act as it has done must appear upon the face of its proceedings.

When those proceedings are brought for review in this court, it must appear
from their inspection, that every thing has been done which the law re-
quired, as the basis of the authority which has been exercised.

The act of 1825, ch. 117, interposes no obstructions to enquiries into such
a subject. It has no application to them.

Under the act of 1795, ch. 56, sec. 1, unless the affidavit of the creditor contain an averment of citizenship as to both creditor and debtor, no attachment against an absconding debtor can lawfully issue.

The act of 1834, ch. 76, sec. 1, dispensed with the averment of citizenship of the plaintiff; *provided*, that if any trial take place it be proved that the plaintiff or plaintiffs, or any of them, at the time of issuing the attachment was or were a resident or inhabitant, or residents or inhabitants, of one of the United States of America, or of a District or Territory thereof.

But where the affidavit is designed to procure a warrant for an attachment against the effects of an *absconding debtor*, under the act of 1795, and does not contain an averment of his citizenship of *Maryland*, it is substantially defective; and upon an appeal from a judgment of condemnation rendered upon it, without a motion to that effect in the county court, the judgment will be reversed and the attachment quashed.

APPEAL from *Baltimore* County Court.

This was an attachment to compel an appearance, commenced on the 15th January, 1841, on the following proofs and proceedings, to wit:

"*State of Maryland, city of Baltimore, to wit:* Be it remembered, that on this fifteenth day of January, in the year one thousand eight hundred and forty-one, before me, the subscriber, a justice of the peace of the State of *Maryland*, in and for said city, personally appeared *Fielder Israel*, a citizen of the State of *Maryland*, and made oath on the Holy Evangely of Almighty God, that *Ignatius Boarman*, late of *Baltimore* county, is justly and bona fide indebted unto him, the said *Fielder Israel* and *Henry Patterson*, executors of *Henry Peters*, late of said county, deceased, in the sum of three thousand two hundred and fourteen dollars twenty-eight cents, over and above all discounts. And at the same time the said *Fielder Israel* produced to me an account, with sundry notes, bills and obligations, on and by which the said *Ignatius Boarman* is so indebted, which are hereto annexed; and the said *Fielder Israel* did also make oath, that he is credibly informed and verily believes, that the said *Ignatius Boarman* has removed from his place of abode, with intent to injure and defraud his creditors.

"Sworn before *T. Hanson Belt*, a justice of the peace of the State of *Maryland*, in and for the city of *Baltimore*."

"*Ignatius Boarman to Henry Patterson and Fielder Israel, ex-ecutors of Henry Peters, deceased.*

| | | | |
|---|---|---:|---:|
| To your note dated 1st of March 1836, for | $400 00 | | |
| Interest thereon from 1st Sept. 1837, | 80 80 | | |
| | | $480 80 | |
| To your due bill, dated 26th March 1836, | | | |
| for - - - | - 375 00 | | |
| Interest thereon from 1st Sept. 1837, | 75 75 | | |
| | | 450 75 | |
| To your note dated 6th Nov. 1835, for | 1,000 00 | | |
| Interest thereon from 1st Sept. 1837, | 202 00 | | |
| | | 1,202 00 | |
| To your note under seal, dated 12th May | | | |
| 1827, for - - | - 800 00 | | |
| By cash, - - - | - 350 00 | | |
| | 450 00 | | |
| Interest thereon from 1st Sept. 1837, | 90 90 | | |
| | | 540 90 | |
| To your obligation and receipts, dated | | | |
| 27th March 1827, - | - 400 00 | | |
| Interest thereon from 1st Sept. 1837, | 80 80 | | |
| | | 480 80 | |
| To your due bill, dated 9th Jan. 1838, | 50 00 | | |
| Interest thereon from date, - | 9 03 | | |
| | | 59 03 | |
| | | $3,214 28 | |

N. B.—Interest calculated to 13th Jan. 1841."

"$400. *Baltimore*, March 1st, 1836. Twelve months after date, I promise to pay *Henry Peters*, or order, four hundred dollars, for value received, with interest.

IGNATIUS BOARMAN."

"375. *Baltimore*, May 26th, 1836. Balance due *Henry Peters*, on a note I have for collection on the *C. Nuns*, in Old Town, three hundred and seventy-five dollars, principal and interest. IGNATIUS BOARMAN."

"1,000. *Baltimore*, Nov. 6th, 1835. Twelve months after date, I promise to — *Henry Peters*, or order, one thousand dollars, for value received. IGNATIUS BOARMAN."

"*Baltimore*, May 12th, 1837. On this first day of September, eighteen hundred and thirty-one, I promise to pay *Henry Peters*, or order, the sum of eight hundred dollars, with legal interest thereon, commencing on the first of September next, payable half-yearly, for value received, the first half-years' interest becomes due on the first day of March, eighteen hundred and twenty-eight. IGNATIUS BOARMAN. (Seal.)"

Witness,—*Thomas Moore.*

(Endorsed.) "350. *Baltimore*, Nov. 20th, 1829. Paid three hundred and fifty dollars on the within bond, and interest on the said three hundred dollars, and interest on the balance up to the first of September last, for which *Boarman* has a receipt. 800=350—450 balance due."

The plaintiff also exhibited as a part of his claim a covenant under the seal of the said I. B., by which *Peters* agreed to lease him a lot, and B. to build two houses thereon, with receipts endorsed thereon by B. for $400.

"To the clerk of *Baltimore* county court: Mr. *Kell*, you are hereby required, on receipt of this warrant and the above oath and annexed vouchers on which the same is granted, to issue an attachment against the lands, tenements, goods, chattels and credits of the said *Ignatius Boarman*, to answer unto the said *Fielder Israel* and *Henry Patterson*, executors of *Henry Peters*, deceased, the above mentioned sum of three thousand two hundred and fourteen dollars twenty-eight cents, current money, and cost of this attachment, according to the acts of Assembly in such case made and provided; and this warrant shall be your sufficient authority therefor. Given under my hand and seal this fifteenth day of January, in the year eighteen hundred and forty-one. T. HANSON BELT, (Seal.)

Justice of the peace in and for the city of *Baltimore.*"

Thereupon the said *Henry Patterson* and *Fielder Israel*, &c. prosecuted out of the county court here, the writ of attachment, in form following, to wit:

"The State of *Maryland*, to the sheriff of *Baltimore* county, greeting: Whereas, *Thomas Hanson Bell*, esquire, one of the justices of the peace for *Baltimore* city, hath this day issued

his warrant to the clerk of said county, directing him to issue attachment against the lands, tenements, goods, chattels and credits of *Ignatius Boarman,* to answer unto *Fielder Israel* and *Henry Patterson,* executors of *Henry Peters,* deceased, the sum of three thousand two hundred and fourteen dollars twenty-eight cents: We therefore command you, that you attach the lands, &c., to the value of three thousand two hundred and fourteen dollars twenty-eight cents, current money, and cost of this attachment, according to the form of the act of Assembly in such case made and provided. And we further command you, that by, &c. &c. Issued the 15th day of Jan. 1841.

THOMAS KELL, clerk."

The plaintiffs also sued out a writ of *trespass upon the case,* against the said I. B., and filed the following short note, to wit:

"*Fielder Israel* and *Henry Patterson,* executors of *Henry Peters,* against *Ignatius Boarman,* action of *assumpsit* in *Baltimore* county court.

"This suit is instituted to recover the sum of three thousand two hundred and fourteen dollars twenty-eight cents, due and owing from the defendant to the plaintiffs, as *executors of Henry Peters,* deceased, on a note of defendant for $400, dated 1st March 1836, payable to said deceased, twelve months after date; on another note of defendant for $1,000, payable to said deceased twelve months after date; on a due bill of defendant for $375, dated 26th May 1836; on another due bill for $50, dated 9th Jan. 1838; on a single bill of defendant to deceased for $800, payable on the first September 1831, dated 12th May 1827; and, on the obligation and receipt of defendant to deceased for $400, payable 1st September 1832, with interest thereon.         J. PENNINGTON, plaintiff's att'y."

The sheriff returned the attachment, to wit:

"Laid in the hands of *William J. Boarman* and *Ignatius Boarman,* junior, the 21st of January 1841, in the presence of *Samuel R. Hiser* and *John Gallagher,* and attached as per schedule.         WILLIAM D. BALL, sheriff."

Which said schedule is in form following, to wit:

"A schedule of the goods and chattels, lands and tenements of *Ignatius Boarman,* seized and taken at the suit of *Fielder Israel* and *Henry Patterson,* executors of Henry Peters, by virtue of a writ of attachment issued out of *Baltimore* county court, to the sheriff thereof directed, and appraised by us, the subscribers, who first being duly summoned and sworn for that purpose. Given under our hands and seals, this 20th day of January 1841.

1 lot of ground fronting on the south side of Little Hughes," &c. &c.

And the sheriff aforesaid also makes return to the court here, of the said last mentioned writ, thus endorsed, to wit: "N. E., copy set up."

Neither the defendant, I. B., nor the garnishee appearing, upon the prayer of the plaintiff: "Therefore it is considered by the court here, that the lands and tenements aforesaid, of the said *Ignatius Boarman,* so as aforesaid attached, be condemned according to the act of Assembly in such case made and provided, towards satisfying unto the said *Henry Patterson* and *Fielder Israel,* executors as aforesaid, as well the sum of three thousand two hundred and fourteen dollars and twenty-eight cents, current money, in the writ of attachment aforesaid specified, with interest from the fifteenth day of January, eighteen hundred and forty-one, as the sum of thirteen dollars eighty-six and two-third cents, by the court here, unto the said *Henry Patterson* and *Fielder Israel,* executors as aforesaid, on their assent adjudged, for their costs and charges by them, about their suit, in this behalf expended."

Whereupon at the same term comes into court here, the said *Ignatius Boarman,* by, &c., and moves the court here, to quash the writ of attachment aforesaid, and files in court here, in said cause, the following motion and reasons, to wit:

1st. Because in the said suit are embraced different pretended causes of action, some of which ought to have been sued upon in assumpsit, and others thereof in debt, and one thereof in covenant.

48    v. I

2nd. Because the sum of money claimed to be due from the defendant to the plaintiffs, for which said attachment issued, is composed of various amounts mentioned in several promissory notes, due bills and single bills, and one action of assumpsit was brought thereon, embracing the whole pretended claim.

3rd. Because causes of action of a different nature are embraced in the said attachment, and together compose the amount claimed in the said attachment, as due from the defendant to the plaintiffs.

4th. Because the said attachment and the proceedings in the said case, are otherwise, and in other respects, informal and invalid.

The defendant, as an additional reason for quashing the attachment in this cause, urges: That the proceedings do not disclose upon their face a compliance with the requisites of the act, in this, that they do not aver the defendant has actually runaway, absconded or fled from justice, or secretly removed himself or herself, from his place of abode, with intent to evade the payment of his just debts.

The motion to quash being overruled by the county court, the defendant prayed an appeal from the judgment of condemnation and from the overruling his motion to quash the attachment.

The cause was argued before STEPHEN, DORSEY, CHAMBERS and SPENCE, J.

By T. P. SCOTT for the appellant, and
By WILLIAM F. FRICK for the appellees.

DORSEY, J., delivered the opinion of this court.

We cannot say the county court erred in overruling the motion, there made, to quash the attachment. The appellant never appeared, or made such motion, until after the judgment of condemnation was rendered by the court. Instead therefore of an application to quash the writ of attachment, his motion should have been first to strike out the judgment, and then to quash the attachment. Until the judgment was strick-

en out the court could, with no consistency, be asked to quash the writ of attachment, upon which it was founded. But, waving this objection to the regularity of the appellant's motion, let us enquire whether the reasons assigned by him were such as would have justified the court in gratifying his request?

The first reason assigned as a ground for quashing the attachment, is that "in the suit are embraced different causes of action, some of which ought to have been sued upon in assumpsit, and other thereof in debt, and one thereof in covenant." The decision of this court, in the case of *Dawson vs. Brown*, 12 *Gill & John.* 53, is decisive upon this point. It is there decided that it is not necessary that a creditor should recover the whole amount of his claim for which the attachment issued. The attachment may be good and available to him for a part of his claim, though wholly unavailable as to the residue. Without the short note showing the plaintiff's cause of action, and the issuing thereon of a *capias ad respondendum* or a summons, (as the case may be,) the proceedings in the attachment would be wholly irregular. Nothing ought to be recovered by a condemnation of the property attached, which was not recoverable from the defendant, had he given special bail and appeared to the process issued against him. The short note states the cause of action to be in assumpsit, and the writ issued was in trespass on the case. For all that part of the appellee's claim, therefore, for the recovery of which an action of debt or covenant was the only remedy, the present proceedings in attachment furnished no remedy. Their short note or declaration, by no amendment which could have been made to it, could be made to embrace claims recoverable only in debt or covenant. It must conform to the writ; of which there could be no amendment, changing the nature of the action. No portion of the claim of the appellee's was recoverable under the proceedings before us, except that for which an action of assumpsit was the appropriate remedy. To this extent the appellees were entitled to recover, and consequently the county court could not, for the reason assigned, have quashed

the writ of attachment, no matter at what stage of the proceedings the motion for that purpose might have been made.

The second and third reasons assigned for quashing the attachment are but reiterations of the first, and consequently are disposed of by the views we have hereinbefore expressed. The fourth reason is so vague and indefinite, that it presents no point which this court are enabled to say, was determined by the court below, and for that vagueness and uncertainty was properly overruled by it, and regarded as a nullity. The additional reason, which was filed for quashing the attachment, was in these words: "That the proceedings do not disclose upon their face a compliance with the requisites of the act, in this, that they do not aver the defendant had actually runaway, absconded, or fled from justice, or secretly removed himself or herself, from his place of abode, with intent to evade the payment of his just debts." It is true that the affidavit in the case before us contains no such averment, but it is equally true that such an averment is not an indispensable requisition to the issuing of an attachment. The provision of the act of Assembly has been, in this respect, if not to the letter, at least substantially complied with. The creditor has sworn "that he is credibly informed, and verily believes, that the said *Ignatius Boarman*, (the debtor,) has removed from his place of abode, with intent to injure and defraud his creditors." Which is all that the act of Assembly in that respect requires.

Had the reasons assigned in the county court, for quashing the attachment, been preferred in the most appropriate stage of the cause, we see nothing in the specific grounds relied on in the motion that could have sustained it. The county court therefore committed no error in overruling it. But the present appeal is not only taken to the order of the court, overruling the motion, but to the judgment of condemnation which has been rendered in the cause. For the reversal of this judgment we see in the record sufficient grounds, if in accordance with the act of 1825, ch. 117, it sufficiently appeared, that the county court had before entering the judgment, or subsequently on a motion to strike it out or amend it, (had such motion

been made,) decided upon the sufficiency of those grounds. This judgment we think erroneous because it condemned the property attached not only towards satisfying that portion of the appellees' claim which was recoverable in an action of assumpsit, but also that portion thereof which could only have been recovered in an action of debt or covenant. And waiving this error, it was also erroneous because it added the interest to the principal on all the claims up to the fifteenth day of January, 1841, and from that time awarded interest to be paid on the gross sum so ascertained. Thus compounding the interest, or charging the appellant with the payment of interest upon interest, a charge, in proceedings like the present, not warranted by any act of Assembly or principle of law of which we are apprised. But for these errors, we are not at liberty to reverse the judgment, it not appearing that they were presented to the consideration of the county court, or that it made any decision in relation thereto. *Sasscer vs. Walker's ex'rs.,* 5 *Gill & Johns.* 102.

The appellant, however, claims a reversal of the judgment before us, for other reasons than those we have mentioned : First, "because there is no averment of the citizenship of *Patterson,* one of the plaintiffs ;" and, secondly, "because there is no averment of the citizenship of the defendant." These points were not raised in the court below, nor does it appear that they were considered or determined by it. Nevertheless, notwithstanding the act of 1825, they are, in this case, fit subjects for review in this court. Where a special limited jurisdiction, distinct from and not embraced by its general jurisdiction, is conferred by act of Assembly on any tribunal, its power to act, as it has done, must appear upon the face of its proceedings. And when those proceedings are brought up for review in this court, it must appear from their inspection, that every thing has been done which the law required as the basis of the authority that has been exercised. To our enquiries into such a subject the act of 1825 interposes no obstructions; it has no application to them. That such is the doctrine of this court in relation to the two defects now under considera-

tion we think fully appears by the case of *Bruce and Fisher vs. Cook, garnishee of Scarborough,* 6 *G. & J.,* 348—where, in the court's opinion, it is said, that if there be error in the proceedings on which an attachment had issued, by reason of which the jurisdiction of the court did not appear, "it would have been a fatal objection after verdict on a motion in arrest of judgment." That the garnishees "might have taken advantage of it, if a jury had been sworn, by a prayer for the instruction of the court; or, after verdict and judgment against them, without raising the objection below, it might, on appeal or writ of error, have been assigned as error here, and this court would have taken notice of and sustained it." To show the materiality of the omissions here complained of, it is only necessary to refer to the act of 1795, ch. 56, sec. 1; under which, unless the affidavit contain such averment of citizenship, as to both creditor and debtor, no attachment against an absconding debtor can lawfully issue; no judgment of condemnation can be rendered by the county court. Those facts not appearing in the affidavit, neither the magistrate who issued the warrant, nor the county court, have any jurisdiction over the subject matter: the whole proceedings would be irregular and ought to be quashed. So stood the law under the act of 1795. But by the act of 1834, ch. 76, sec. 1, it is enacted "that no attachment that shall hereafter be issued by virtue of the act to which this is a supplement or of any of the supplements thereto, shall fail, be dismissed, quashed or defeated, because of any defect in any averment, as to the citizenship or residence or inhabitancy of the plaintiff or plaintiffs or any of them, or because of any omission altogether of averment in that respect in the affidavit for such attachment, or in any act or any part of the proceedings preliminary to such issuing of attachment; provided that if any trial take place it be proved at the trial in such attachment case that the plaintiff or plaintiffs, or any of them, at the time of issuing said attachment, was or were a resident or inhabitant or residents or inhabitants of one of the *United States of America,* or of a District or Territory thereof." By this act of Assembly, under

the circumstances in which this case stands before us, we think the appellant cannot claim a reversal of the judgment, or that the proceedings on which it is founded be quashed, by reason of the omission of the averment of citizenship as to one of the plaintiffs. The design of this act of Assembly was to protect plaintiffs from the effects of the omissions enumerated until a trial should take place, at which the omission complained of could be supplied by proof. The infirmity in the affidavit, as to the citizenship of the defendant, remains unhealed by any legislative act, and compels us to reverse the judgment of the county court, and to quash the writ of attachment on which it is founded.

**JUDGMENT REVERSED AND ATTACHMENT QUASHED.**