671 A.2d 515

Torrence YOUNG

v.

**PROGRESSIVE CASUALTY INSURANCE COMPANY.**

**No. 757, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Feb. 8, 1996.

Vilecia C. Summers (Delores A. Young and Young Associates, P.C., on the brief), Landover, for Appellant.

Michael A. DeSantis (DeCaro, Doran, Siciliano, Gallagher, Sonntag & DeBlasis, on the brief), Lanham, for Appellee.

Argued before BLOOM, CATHELL and DAVIS, JJ.

CATHELL, Judge.

This is a factually and procedurally unusual garnishment case. The parties have not directed us to any prior Maryland cases of a similar factual and procedural nature. As Justice Holmes noted, however, "I long have said there is no such thing as a hard case. I am frightened weekly, but always when you walk up to the lion and lay hold the hide comes off and the same old donkey of a question of law is underneath." 1 Holmes–Pollock Letters 156, *reprinted in* M. Frances McNamara, *Famous Legal Quotations* 64 (1967). In the instant case, the old donkey is the issue of when and where jurisdictional challenges can be made. We explain.

As relevant to the issues before us, a default judgment in a motor vehicle tort suit was rendered in the District of Columbia against one Jeffrey Thomas. Thomas was insured by Progressive Casualty Insurance Company (Progressive), appellee. That default judgment was subsequently certified to the Circuit Court for Prince George's County by Torrence Young, appellant, the initially successful plaintiff in the District of Columbia action. Notices of that action and writs of garnishment were served both on appellee and its insured. Thereafter, the foreign District of Columbia judgment became enrolled in the Circuit Court for Prince George's County. Apparently, either during the period between certification and enrollment, or shortly thereafter, Progressive's insured and appellant settled the matter between them.

The unusual issue here concerns the continued viability of the certification and enrollment of a foreign judgment in Maryland after the foreign judgment has been vacated upon a finding of a lack of jurisdiction on the part of the court that initially rendered it. It is even more unusual in that the judgment debtor settled with the judgment creditor, appellant here, as to the Maryland proceeding, by assigning to appellant his rights to the insurance policy he held with Progressive. In return for this settlement, the judgment debtor was relieved of all obligations in Maryland under the foreign judgment enrolled here. Nevertheless, after the assignment, the insurance company, pursuant to the provisions of its policy, continued to represent the judgment debtor in the District of Columbia court, which ultimately vacated the default judgment. Thereafter, on Motion for Summary Judgment, the circuit court entered judgment in favor of Progressive, the garnishee, because the underlying judgment and monetary award had been vacated on jurisdictional grounds by the District of Columbia court. Appellant now contests the entry of that summary judgment by the Prince George's County Circuit Court and raises two issues in support thereof:

I.  Whether the circuit court erred when it granted Progressive's Motion for Summary Judgment when there were material issues in dispute.

II. Whether the circuit court erred when it dismissed the Writ of Garnishment with prejudice, even if the enrolled judgment was no longer enforceable under Maryland law.

The arguments, as presented by appellant in reference to issue one, are:

Progressive failed to timely defend against the D.C. judgment and was barred by the principles of res judicata and collateral estoppel.

Progressive failed to diligently defend Thomas against the entry of foreign judgment in the circuit court and the enrolled judgment may not be vacated by a non-final order from that foreign jurisdiction.

The arguments presented in reference to issue two are:

A post-judgment settlement may extinguish the judgement [sic] and create an enforceable contract.

The assignment of judgment may be enforced against Progressive in the garnishment proceeding.

### Additional Procedural Facts

In the case at bar, appellee, in its initial response to the writ of garnishment in the Circuit Court for Prince George's County, questioned the jurisdiction of the District of Columbia court over its insured, alleging that Thomas "never received notice" as required under the act at issue there. While that issue was pending in the Prince George's County Circuit Court, appellee filed a motion in the District of Columbia court to vacate the underlying judgment. Appellant responded in the District of Columbia court, asserting that appellee's motion "had no merit," and, therefore, participated in a hearing on the merits in that court on the matter of jurisdiction.

Appellee, in its opposition to appellant's motion for summary judgment in the Maryland court, informed the Maryland court of the District of Columbia proceedings then in progress to vacate the judgment and of the absence of jurisdiction on the part of the District of Columbia court over appellee's insured, Thomas. Progressive argued to the Maryland court,

"It is clear that both jurisdictions permit this remedy [motion to vacate] in order to ensure due process."

On April 19, 1994, the underlying judgment against Thomas was vacated by the rendering District of Columbia court. The District of Columbia court found a lack of jurisdiction, based, at least in part, upon a finding that appellant, Young, had attempted to serve Thomas at the wrong address. That court, noting conflicting evidence, found:

> In light of this conflicting evidence, plaintiff has not borne her burden of proving actual notice by a preponderance, and thus has not satisfied the requirements of the [Motor Vehicle Safety Responsibility Act].

Thereafter, Progressive filed a supplemental opposition to appellant's Motion for Summary Judgment in the Prince George's County Circuit Court, advising that court that the underlying judgment had been vacated.

A full hearing was held in the Maryland court on the parties' motions relating to the foreign court's finding in respect to jurisdiction. In granting appellee's Motion for Summary Judgment, the Prince George's County court stated:

> [Y]ou can't proceed on a garnishment of something that's not there. And the underlying judgment right now is not there. You might get it back, and then, you can come again and redo it. . . .
>
>   . . . .
>
> . . . [A]t the moment there is no underlying judgment in the District of Columbia on which you may proceed . . . many months ago [the default judgment was dismissed].
>
>   You appealed. . . . They, in turn, dismissed the appeal . . . and then, you've asked for reconsideration. . . .
>
>   . . . [F]or whatever reason, it's not there.

The reason the judgment was "not there" was a finding by the District of Columbia court that it lacked jurisdiction in the first instance. That District of Columbia court, in a carefully considered opinion, stated, with respect to whether it had jurisdiction in the original case:

Plaintiff presents conflicting evidence. On one hand, the mailing to the wrong address and letters returned unclaimed infer that no actual notice was had. On the other, plaintiff's attorney submits affidavits from herself and office personnel that defendant stated he "knew about" the case. . . .

An alternative analysis under the District's long-arm statute results in the same conclusion. Proof of service by mail outside the District may be made by "includ[ing] a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the court." D.C.Code § 13–431 (1981). As stated above, the return receipt was neither signed by the addressee nor appended to the writ, nor did plaintiff prove service by a preponderance of the evidence through other means. In personam jurisdiction was not established under this long-arm statute, either.

Plaintiff argues that Judge Kessler's decision on damages was made on grounds other than default of the defendant, and should therefore stand. This Court, however, had no jurisdiction over the defendant to make that decision. Since the underlying default judgment was invalid, the judgment of damages cannot stand.

A default judgment is vacated under D.C. Superior Court Rule 60(b)(4). When employing this rule, the Court must consider whether the party moving to vacate 1) received actual notice, 2) acted in good faith, and 3) acted promptly upon discovery of the judgment, as well as whether prejudice would result to the other party. *Jones v. Health Resources Corp. of Am.,* 509 A.2d 1140, 1145 (D.C.1986) (Default judgment entered against alleged sublessees for possession and rent due reversed for entrance without evidence of liability or damages). Defendant never received actual notice, but acted promptly and in good faith upon discovery of the judgment against him. Although plaintiff characterizes his acts as "duplicitous" and "egregious," the Court finds no evidence of bad faith or of undue prejudice to the other party.

It is clear, therefore, that the underlying judgment was vacated. When the foreign court determined that it had lacked jurisdiction in the first instance, the judgment was vacated and thereafter ceased to exist. Moreover, the issue of lack of jurisdiction had thus been litigated. At the point that the judgment was vacated, that District of Columbia proceeding became a case for trial. The appeal of that decision was thus premature, because the tort case remained to be tried, after which all prior orders, including the order to vacate, would be subject to appellate review.

We earlier described the "old donkey" as the issue of jurisdiction. If a court of competent jurisdiction—and the court that rendered the underlying judgment can hardly be considered as not being jurisdictionally competent whether it was right or wrong in vacating the judgment—makes a finding of lack of jurisdiction at the time of the original proceeding, the original judgment and all that flows from it may well be nullities.[1] Thus, appellant's many arguments about the finality of the District of Columbia order vacating the judgment,[2] in addition to being legally wrong, cannot affect the fatal defect contaminating the entire Maryland garnishment action—the original lack of jurisdiction. At that point in time, there was a finding by a court of competent jurisdiction that there had been a lack of jurisdiction. We explain.

## The Law

### I

This issue is primarily resolved by an examination of the law relating to how and when jurisdictional issues may be

1. We leave to another day the effect of Thomas's settlement agreement with appellant on the enrollment of the judgment in Maryland. We are led to believe that, while the garnishment proceedings against appellee have been effectively dismissed, there has been no formal request that the actual judgment be stricken.

2. The Maryland trial court commented that appellant's arguments left him "a tad" confused. We understand. To clear up the confusion, we simply note that, when the judgment was vacated, it ceased to exist.

raised. The short answer is that jurisdictional issues may be raised in almost any manner and at virtually any stage in the proceedings. *See* Md. Rule 8–131(a) ("The issues of jurisdiction ... may be raised in and decided by the appellate court whether or not raised in and decided by the trial court."); *Heath v. State,* 198 Md. 455, 466, 85 A.2d 43 (1951) (reiterating that "matters of jurisdiction are always before the court").

The long answer is found in a line of cases dating from the 1700s to the present. We trace that evolution by first discussing a case from the 1800s. *Wernwag v. Pawling,* 5 G. & J. 500, 507 (1833), involved an action in debt filed in Maryland, based upon a judgment obtained in Pennsylvania, in which the Maryland court was asked to examine the jurisdiction of the foreign court that had rendered the judgment. The Maryland Court stated:

> If a judgment is conclusive in the State where rendered, it is equally conclusive every where. If re-examinable there, it is likewise re-examinable here. It is therefore put upon the same footing as a domestic judgment. In *Mills vs. Duryee* [11 U.S. (7 Cranch) 481, 3 L.Ed. 411 (1813) ], it is said, *the only inquiry, where the suit is upon the judgment of another State, is, what is the effect of the judgment in the State where rendered.* The question of jurisdiction of the tribunal pronouncing the judgment, is however, also examinable; for if the tribunal had no jurisdiction, the judgment would be a nullity every where.
>
> The question then ... would be open for inquiry.... [W]e shall proceed to inquire, whether there was a defect of jurisdiction.... [Citations omitted, emphasis added.]

The Court of Appeals discussed *Wernwag* in *Weinberg v. Johns–Manville Sales Corp.,* 299 Md. 225, 234, 473 A.2d 22 (1984), in a full faith and credit context. The *Weinberg* Court emphasized that

> *[t]he only inquiry, where the suit is upon the judgment of another State, is, what is the effect of the judgment in the State where rendered.*

299 Md. at 234, 473 A.2d 22 (quoting *Wernwag,* 5 G. & J. at 507). Similarly, in the garnishment case of *Wever v. Baltzell,* 6 G. & J. 335, 342 (1834), the Court held:

> There can be no recovery against a garnishee in a case in which, for the want of jurisdiction appearing upon the record, the goods of the defendant could not have been condemned. A Court that would be constrained to quash an attachment, for the want of jurisdiction being given by the proceedings on which it is founded, cannot entertain jurisdiction against a garnishee coming in under the same proceedings.

In *Bruce v. Cook,* 6 G. & J. 345, 348 (1834), the attachment by garnishment upon a foreign judgment failed to set out the residence of the garnishee as then required. After the issue was joined, the garnishee moved to quash, based upon a lack of jurisdiction as evident from the pleadings. The court opined:

> [T]o say that this Court must be confined . . . in the reason assigned in the motion to quash, to the writ of attachment, and cannot look beyond it . . . [where it appeared that] the Court below had not jurisdiction of the case, would be to sustain an objection rather too attenuated. The other objection, that the motion to quash was made after issues joined, rests, we think, on no better foundation.
>
> The garnishees need not have pleaded as they did, but might have availed themselves of the want of jurisdiction by demurrer. It [lack of jurisdiction] would have been a fatal objection after verdict, on a motion in arrest of judgment. They might have taken advantage of it [lack of jurisdiction], if a jury had been sworn, by a prayer for the instruction of the Court; or after verdict and judgment against them, without raising the objection below, it [lack of jurisdiction] might on appeal or writ of error, have been assigned as error here [the Court of Appeals], and this Court would have taken notice of and sustained it.

See also *Boarman v. Patterson,* 1 Gill 372, 378–79 (1843), wherein the Court, while acknowledging that jurisdictional

issues may be raised at any level, noted that, when jurisdictional issues relating to the underlying judgment are first raised in attachment or garnishment proceedings at the trial court level,

[i]nstead therefore of an application to quash the writ of attachment, his motion should have been first to strike out the judgment, and then to quash the attachment. Until the judgment was stricken out the Court could, with no consistency, be asked to quash the writ of attachment, upon which it was founded.

*Bank of the United States v. Merchants Bank,* 7 Gill 415, 429–30 (1848), involved the *res judicata* effect of a foreign judgment. The court added by way of *dicta,* that

[T]he right to attack a judgment, on the ground that the tribunal pronou[n]cing it was not invested with jurisdiction and authority; that it was inoperative and void, as being *coram non judice,* is undoubted, with respect, both to domestic and foreign judgments.

*See also Campbell v. Morris,* 3 H. & McH. 535, 553 (1797) ("[E]very fact is cognisable by the court which will show the attachment issued irregularly ... and evidence *de hors* ... the proceedings may be resorted to...."); *Stone v. Magruder,* 10 G. & J. 383, 387 (1839) ("For any substantial defect ... the motion ... should be heard at any stage...."); *Lambden v. Bowie,* 2 Md. 334, 338 (1852). We note also the case of *Evesson v. Selby,* 32 Md. 340, 347 (1870), wherein the Court of Appeals stated:

[A] substantial defect ... goes to ... jurisdiction, it will be entertained at any stage of the trial, and if the court discovers its want of jurisdiction, it is proper to arrest the further progress of the cause by quashing the attachment.

In *Cromwell v. Royal Canadian Ins. Co.,* 49 Md. 366, 380–82 (1878), the Court noted, in respect to a motion to quash:

This motion [as to lack of jurisdiction], it is insisted, could not be made by the garnishee after it had previously submitted itself to the jurisdiction.... The decided weight of judicial authority ... sustains the position that this

objection may be raised after as well as before a plea to the merits.

*See also Coward v. Dillinger,* 56 Md. 59, 61 (1881) ("[O]bjection ... may be taken advantage of ... after verdict, or without ... objection ... below, it may be relied on on appeal.... [A] judgment ... without jurisdiction is *coram non judice."*). Furthermore, in a case in which the Maryland Court of Appeals determined that the Pennsylvania court did not have jurisdiction to render a judgment, and thus the judgment was unenforceable in Pennsylvania and Maryland, the Court noted: "The judgment sued on can have no greater or larger extent or force in this State than it is entitled to in the State where it was recovered...." *Coates v. Mackey,* 56 Md. 416, 419 (1881).

While most of the law in reference to the jurisdictional aspects of attachment and garnishment proceedings was addressed most frequently in the early cases, cases of comparatively more recent vintage continue to maintain the status of the law in respect thereto. In *Bauernschmidt v. Safe Deposit & Trust Co.,* 176 Md. 351, 356, 4 A.2d 712 (1939), the Court stated:

A motion to quash may be interposed either by defendant or garnishee for reasons apparent from the face of the proceedings, or for matters of law or of fact denying the right of the plaintiff to attach.

See also the garnishment case of *Langville v. Langville,* 191 Md. 103, 110, 60 A.2d 206 (1948) ("If the defect is jurisdictional, it may be raised for the first time on appeal.") (citation omitted). *Picking v. Local Loan Co.,* 185 Md. 253, 44 A.2d 462 (1945), involved the certification and entry of an Illinois judgment in Maryland. Picking, responding to the action to enter and certify the Illinois judgment, asserted, in part,

(2) that the [underlying] judgment was invalid for lack of jurisdiction in the Chicago Municipal Court, ... (4) that the defendant was not a resident of Illinois and did not own property therein, (5) that she had no notice of the proceed-

ing in the Chicago Municipal Court, and did not authorize anyone to appear for her therein.... 

*Id.* at 257, 44 A.2d 462. While the Court of Appeals reversed and remanded on other grounds, *i.e.,* that the record of the Illinois judgment was incomplete, it noted that

[i]n 2 *Poe, Pleading and Practice,* 5th Ed., Sec. 404 c, p. 382, it is said: "... it [judgment of foreign state properly entered] is conclusive as to the merits, and is only open to attack upon the ground that the court rendering it had no jurisdiction. This objection it is competent for the party [defendant] who sets it up to make good, not only from the record itself, if such want of jurisdiction there appear, but also by evidence *aliunde.*"

*Id.* at 262, 44 A.2d 462.

As the late Judge Lowe aptly stated, in *Renwick v. Renwick,* 24 Md.App. 277, 287, 330 A.2d 488 (1975):

[I]n a suit to enforce a foreign judgment, the jurisdiction of the court which rendered it is open to judicial inquiry.... *If the rendering court acted without jurisdiction, the full faith and credit clause does not operate and the foreign judgment is of no force and effect.*

... In making that determination, we must decide 1) whether the New Jersey court complied with its own law regarding service of process; and if so, 2) whether the New Jersey law comported with due process. [Citations omitted, emphasis added.]

In the case *sub judice,* the trial court did not, and we do not, have to review the foreign law to determine whether its jurisdictional requirements were met. Appellee, rather than litigating the issue in Maryland, went to the rendering jurisdiction and, in a contested hearing in which appellant had an opportunity to be heard, and was heard, prevailed. The rendering foreign jurisdiction determined that its jurisdictional requirements had not been met.

We know of no provision in Maryland law that would insulate the original judgment from attack in the rendering

jurisdiction after it has been certified and become enrolled in Maryland, especially when the attack directed at the original judgment is based upon a lack of jurisdiction. The very jurisdictional attack raised in the District of Columbia court could have been raised in the Maryland courts. It could even be raised as this opinion is being written. *See Imperial Hotel, Inc. v. Bell Atl. Tri–Con Leasing Corp.*, 91 Md.App. 266, 603 A.2d 1371 (1992).

We restated the applicable law relating to jurisdictional issues in garnishment proceedings in *Mervin L. Blades & Son, Inc. v. Peninsula Bank*, 43 Md.App. 630, 406 A.2d 944 (1979):

"... [A] motion to quash on fundamental or jurisdictional grounds can be filed either by the garnishee or by the defendant, after pleas by the garnishee. '... The defects, upon which the motion is based, may be either apparent upon, or *dehors* the proceeding.... A motion to quash an attachment for a substantial defect in the proceedings, goes to the question of jurisdiction and will be entertained at any stage of the trial.... [I]t may be filed at any stage ... although the garnishee has pleaded and issue is joined, and even after he has confessed assets and expressed his willingness to abide by the order of the court.'" [Citations omitted.]

*Id.* at 632–33, 406 A.2d 944 (quoting *Cole v. Randall Park Holding Co.*, 201 Md. 616, 625–26, 95 A.2d 273 (1953)). In the case at bar, the rendering court found a substantial defect in the underlying proceedings—a lack of jurisdiction.

In a recent case, in which we held that Maryland courts could determine whether foreign courts had jurisdiction in respect to a judgment sought to be certified and enrolled here, we noted, "In a suit to enforce the judgment of another state the jurisdiction of the foreign court is open to judicial inquiry." *Imperial Hotel*, 91 Md.App. at 270, 603 A.2d 1371. We then noted that "when the matter of fact or law on which jurisdiction depends *was not litigated in the original suit* it is a matter to be adjudicated in the suit founded upon the judgment." *Id.* In the case *sub judice*, the underlying District of

Columbia judgment was by default. The issue of jurisdiction was not litigated at that time, but it was later raised in that original case and in that rendering court when appellee filed its motion to vacate the underlying judgment based upon a lack of jurisdiction.

In *Imperial Hotel*, we noted that the record of a foreign judgment was *prima facie* evidence of jurisdiction and that the underlying judgment was "presumed valid until it is declared invalid by a competent court." *Id.* at 271–72, 603 A.2d 1371. While it may not be the only competent court, the District of Columbia court is clearly a court competent to resolve the jurisdictional status of its own cases. We also speculated, in *Imperial Hotel*, as to the effect of jurisdictional litigation in the rendering forum—what, in effect, has occurred in the case *sub judice*:

> If the issue of personal jurisdiction had been raised and fully adjudicated in New Jersey, the doctrine of *res judicata* could have served to bar the appellants from relitigating the issue in Maryland. The Supreme Court has previously held that the doctrine of *res judicata* must be applied to questions of jurisdiction ... where, under the law of the state in which the original judgment was rendered, such adjudications are not susceptible to collateral attack.

*Id.* at 272–73 n. 1, 603 A.2d 1371. We went on to explain in *Imperial Hotel* that the trial court had been in error in *mandating* that the jurisdictional issue be litigated first in the foreign state. Maryland courts *could* address the jurisdictional issue because the result was "compelled where the jurisdictional challenge is unlitigated in the foreign jurisdiction." *Id.* at 273, 603 A.2d 1371. Nevertheless, while we noted that a trial court could not insist that jurisdictional issues first be raised in the rendering jurisdiction, we prefaced our holding on the unlitigated status of the issue in the foreign court in that particular case. In the case *sub judice*, appellee was not directed to go to the foreign jurisdiction to resolve the jurisdictional questions; it chose to do so. The matter has now been litigated and resolved in the District of Columbia.

The Circuit Court for Prince George's County was fully aware of the ruling of the District of Columbia court, as that court's opinion finding a lack of jurisdiction was attached as an exhibit to appellee's Motion for Summary Judgment. While the Maryland court did not explicitly make a separate jurisdictional decision (it might have run afoul of *res judicata* or collateral estoppel principles had it done so), it impliedly accepted the findings of the rendering jurisdiction as to that court's lack of jurisdiction to render the underlying judgment when the Maryland court granted appellee's motion. Moreover, to hold that a state in which a foreign judgment has been certified and entered *must* (rather than may) make its own determination as to the jurisdiction of the foreign court after that court has found it lacked jurisdiction could lead to ludicrous results.

We hold that, in attachment or garnishment cases based upon foreign judgments filed in this State, the jurisdiction of the foreign court may be litigated in either the foreign jurisdiction or in the Maryland court. If the foreign court that rendered the judgment later determines that it lacked jurisdiction and vacates the judgment, a defendant, attachee, or garnishee *may* move, by way of motion to quash or to strike or by motion for summary judgment, to vacate or dismiss the Maryland proceedings that are based upon the vacated foreign judgment. The continued enrollment in this State of a judgment vacated by the rendering state is an irregularity and/or a mistake. That mistake, even though made by the foreign court, was a jurisdictional mistake. *See* Md. Rule 2–535(b). The Maryland court *may*, under those circumstances, dismiss the Maryland proceedings in their entirety or, as in the case at bar, in part, *i.e.*, solely the garnishment proceedings.[3]

## II

Appellant argues that "the Writ [of garnishment] should not have been dismissed with prejudice because the

---

3. *See* note 1, *supra.*

assignment clearly gives rise to a contractual claim that Young may seek to enforce against [P]rogressive in the garnishment proceeding." Because there no longer remains a garnishment proceeding following our resolution of appellant's first issue, this issue is effectively moot.

We presume that, should Thomas have more of a claim against Progressive than one for coverage indemnification, the assignment *may* (though we do not decide this issue) permit appellant to step into Thomas's shoes and proceed against Progressive directly. This presumption, however, is itself premature in that the policy coverage has not been litigated and may never be. Appellant may lose in the District of Columbia trial on the merits. In that case, Thomas—and, thus, appellant, pursuant to the assignment (if it is valid)— may have no claim against Progressive. Even if appellant wins in the District of Columbia court, Progressive may pay the judgment and Thomas, in that event (and appellant), may have no further recourse against Progressive. Other factual scenarios might also affect the validity and viability of the assignment. It may well be worthless, or it may be valuable dependent upon the underlying proceedings in the District of Columbia and dependent upon an interpretation of the assignment itself should the various proceedings ever result in the necessity that the agreement be interpreted. In any event, this issue is not now properly before us for resolution.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**