JOPLIN CORPORATION, a Missouri Corporation, Claimant-Appellant,

v.

The STATE of Oklahoma ex rel. Gerald GRIMES, Insurance Commissioner, as Receiver of Community National Life Insurance Company, Defendant-Appellee.

No. 50310.

Supreme Court of Oklahoma.

Oct. 25, 1977.

**1162**

Rucker, Tabor, McBride & Hopkins, Inc., M. Darwin Kirk, Tulsa, Guilfoil, Symington, Petzall & Shoemake, Edward G. Farmer, Jr., St. Louis, Mo., for claimant-appellant.

Frederic N. Schneider, III, Boone, Ellison & Smith, Tulsa, for defendant-appellee.

DOOLIN, Justice:

This appeal involves the question of the status of a creditor's claim in a delinquency proceeding against an insurance company, commenced under the authority of the Uniform Insurers Liquidation Act (Insurers Act) 36 O.S. 1971 § 1801 et seq. (recodified as 36 O.S.1976 Supp. § 1901 et seq.) Joplin Corporation filed a Missouri judgment against Community National Life Insurance Company (Community) in Tulsa County, pursuant to the Uniform Enforcement of Foreign Judgments Act, (Uniform Act) 12 O.S.1971 § 719 et seq. Joplin claims this filing created a lien by virtue of 12 O.S.1971 § 706. Because it holds a lien, Joplin submits it should be considered as a secured creditor as defined by § 1801 (12) of the Insurers Act and accordingly be given preferential status. We hold that under the facts of this case, Joplin is not a preferred creditor and we therefore uphold the decision of the trial court.

The sequence of pertinent events in the litigation is as follows:

1. April 4, 1969: Delinquency proceeding against Community under Insurers Act was commenced by Insurance Commissioner of State of Oklahoma in Tulsa District Court.

2. April 14, 1969: Joplin took judgment against Community in Jasper County, Missouri for $140,301.41.

3. April 16, 1969: Tulsa court issued an order under the authority of 36 O.S. 1961 §§ 1802A, 1804B [1] that all property of Community be in custodia legis. The order enjoined all persons from seeking or obtaining preferences, judgments, attachments or other liens or the making of any levy against Community or its assets, so long as the court retained jurisdiction.

4. April 18, 1969: Joplin filed the Missouri judgment in the Tulsa District Court.

5. May 6, 1969: Missouri court overruled motion of Community for a new trial and a stay in Missouri action. The motion was made on basis that Community was under temporary legal restraints emanating from the receivership action in Tulsa County. No appeal was taken and the Missouri judgment is final.

6. June 15, 1970: Order of liquidation was filed in Tulsa District Court proceeding.

7. May 26, 1971: Joplin filed its claim in the liquidation proceeding, asserting a judgment lien on proceeds from the sale of certain real property owned by Community.

8. October 13, 1976: Order by district court denying preferential status to

---

1. 36 O.S.1971 § 1802 authorizes general powers of the district court under Insurers Act. Subsection A provides:

A. The district court is vested with exclusive original jurisdiction of delinquency proceedings under this article, and is authorized to make all necessary and proper orders to carry out purposes of this article.

36 O.S.1971 § 1804 is titled "Injunctions" Subsection B provides:

"The court may at any time during a proceeding under this article *issue such other in-*

*junctions* or orders as may be deemed necessary *to prevent* interference with the Insurance Commissioner or the proceedings, or waste of the assets of the insurer, or the commencement or prosecution of any actions, or *the obtaining of preferences, judgments, attachments or other liens,* or the making of any levy against the insurer or against its assets or any part thereof." (Emphasis supplied).

Also see *Irwin v. Pacific American Life Insurance Company,* 10 Ariz.App. 196, 457 P.2d 736 (1969).

Joplin's claim and allowing its claim with interest at the rate of 10% from April 18, 1969 to June 15, 1970, the date of the liquidation order. The claim was allowed as a general claim against Community's assets.

■ Joplin appeals this last order, asserting that by its proper filing of the Missouri judgment in Tulsa District Court, it acquired a judgment lien on the real property of Community. Therefore, its claim is entitled to priority as a secured claim. Joplin further submits it is entitled to 10% interest per annum on the judgment from April 18, 1969 until it is paid, as allowed by 12 O.S. 1971 § 727.[2]

The receiver admits the validity of the Missouri judgment upon which Joplin bases its claim. However he contends the trial court was correct in allowing it only as a general claim. He charges that the April 16, 1969 injunction prohibited any lien from attaching after that date. Therefore the April 18, 1969 filing of the Missouri judgment did not create a lien in favor of Joplin. We agree.

■ The local law of the forum (Oklahoma) determines the methods by which a judgment of another state is enforced.[3] Prior to the enactment of the Uniform Act, the only method of enforcing a valid judgment of a sister state was to prosecute a new law suit. In 1968, Oklahoma adopted the Uniform Act. This act provides for a simple registration procedure, authorizing the filing of an authenticated copy of the extrastate judgment in the office of the clerk of the appropriate Oklahoma court and for notice of the filing to be sent by mail to the judgment debtor.[4] The Uniform Act then provides in § 721:

"* * * The clerk shall treat the foreign judgment in the same manner as a judgment of the District Court of any county of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a District Court of this state and may be enforced or satisfied in like manner."

Under this statute after the judgment is filed it is treated as any other valid Oklahoma judgment.

12 O.S.1971 § 706 provides that Oklahoma judgments:

"shall be liens on the real estate of the judgment debtor within the county in which the judgment is rendered from and after the time such judgment is entered on the judgment docket, but such judgment shall not be a lien on the real estate of the judgment debtor in any other county in this State until a certified copy of such judgment shall be filed and docketed in such county, as hereinafter provided, and shall not be a lien on the real estate of the judgment debtor in any county in the State, except in all counties where a permanent record of the judgments of the United States Court is kept open to the public, until a certified copy of such judgment shall be filed and docketed in the office of the State District Court Clerk of the county wherein the real estate is situated. An attested copy of the Journal Entry of any such judgment, together with a statement of the costs taxed against the debtor in the case, may be filed in the office of the clerk of the District Court of any county and such judgment shall be a lien on the real estate of the debtor within that county from and after the date of filing and entering such judgment on the judgment docket. The Clerk shall enter judgment on the appearance and judgment dockets in the same manner and within the same time after such judgment is filed in his office as if rendered in the court of which he is clerk. * * *"

■ Under the above statute the Missouri judgment, like any other Oklahoma judg-

---

2. 12 O.S.1971 § 727 provides: "All judgments of courts of record shall bear interest, at the rate of ten percent (10%) per annum, from the date of rendition, * * *"

3. Restatement (Second) Conflicts of Law § 99 (1967).

4. See R. Leflar, *American Conflicts Law* § 79 p. 182 (1968).

ment, could not become a lien upon Community's real estate in Tulsa County until *April 18*, the day it was recorded.

The *April 16* injunction by the Tulsa District Court ordered that all persons are "enjoined and restrained from seeking or obtaining of preference, judgments, attachments, or other liens * * * so long as this court retains its exclusive original jurisdiction over the affairs of the defendant Company and all of such assets and property are in custodia legis." This injunction effectively prevented the creation of a judgment lien on any real property held by Community after that date.

■ That Joplin's claim was not a secured claim is further upheld by section 1801(12) of the Insurers Act which defines "secured claim."

" 'Secured claim' means any claim secured by mortgage, trust deed, pledge, deposit as security, escrow, or otherwise, but not including special deposit claim or claims against general assets. The term also includes claims which more than four months prior to the commencement of delinquency proceedings in the state of the insurer's domicile have become liens upon specific assets by reason of judicial process."

This section specifically denies "secured claim" status to Joplin's claim as it was not acquired four months prior to the commencement of the delinquency proceeding.[5]

Joplin attempts to support its position by suggesting the Missouri court's action on May 6, overruling Community's motions to vacate and stay the Missouri judgment, somehow decided the question of the lien status in Oklahoma. We are unable to follow this argument. The denial by the Oklahoma court of lien status to the Missouri judgment is not a collateral attack on the judgment. There is no doubt the Missouri judgment is final and entitled to full faith and credit in Oklahoma, but nothing the Missouri court may do can create a lien on Oklahoma assets.

■ Although this court has not previously interpreted the injunctive power given to the district court under the Insurers Act, these statutes clearly allow this type of order. Accordingly, any lien attempted to be created in contravention of the court's injunction is invalid. The trial court correctly found Joplin was a general creditor without preference or priority.

■ Joplin's second proposition concerns the interest on the judgment. The trial court found all assets and liabilities of Community were determined at the date of the order of liquidation, June 15, 1970, and Joplin was not entitled to interest beyond that date. Joplin suggests interest should be allowed until the judgment is paid. We do not agree. Section 1825 of the Insurer's Act provides:

"The rights and liabilities of the insurer and of its creditors, policyholders, stockholders, members, subscribers, and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order, subject to the provisions of this article with respect to the rights of claimants holding contingent claims."

It is readily apparent that the total liability of Community must be fixed at a specified date in order to achieve equitable and economical liquidation. This must include Community's total liability to Joplin on the judgment and all other creditors.

The trial court was correct in its determination that interest on the judgment held

---

**5.** Section 1820 also speaks to the creation of a lien against property in hands of receiver.

"During the pendency of delinquency proceedings in this or any reciprocal state, no action or proceedings in the nature of an attachment, garnishment or execution shall be commenced or maintained in the courts of this state against the delinquent insurer or its assets. Any lien obtained by any such action or proceeding within four (4) months prior to the commencement of any such delinquency proceeding or at any time thereafter shall be void as against any rights arising in such delinquency proceeding."

by Joplin must be cut off on the date of the filing of the order of liquidation.

AFFIRMED.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY and BARNES, JJ., concur.